IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| WILLIAM H. VIEHWEG, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF MOUNT OLIVE, JOHN M. )<br>SKERTICH, JOE BERRY, )<br>MELINDA ZIPPAY, MARCIA )<br>SCHULTE, HOWARD HALL, )<br>RICHARD WEBB, JAMES COX, )<br>STEVE REMER, LEAH )<br>GOLDACKER, JOHN GOLDACKER, )<br>CHUCK COX, DAN O'BRIEN, )<br>BRADLEY G. HUMMERT, HENRY )<br>MEISENHEIMER GENDE, INC., )<br>JEFF BONE, JANE DOE 1-10, and )<br>JOHN DOE 1-10, )<br>)<br>Defendants. ) | Case No. 21-cv-3126 |

OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Plaintiff William H. Viehweg filed a Complaint under 42 U.S.C. § 1983 asserting violations of his Fourteenth Amendment rights. Before the Court are two Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 37, 41). For the following reasons, both Motions to Dismiss are GRANTED.

I.     FACTUAL ALLEGATIONS

    A. Parties

In his amended complaint, Plaintiff alleges Defendants violated his procedural and substantive due process rights in addition to denying Plaintiff equal protection, all in violation of the Fourteenth Amendment. (Doc. 36, Pl. Am. Compl. 18-20.) Plaintiff is a resident of the City of Mount Olive, Illinois ("City"), a city of about 2,000 residents and one of the named Defendants in this case. (*Id.* at 1.)

Defendant John M. Skertich served as the elected Mayor of the City at all times relevant to this action or since at least 2011. (*Id.* at 2.) At all relevant times, Mayor Skertich was the chief executive officer of the City, chairman of the City's ordinance committee, and the nominal leader of the City's dominant political party. (*Id.*)

Defendant Bradley G. Hummert is the president of Defendant Henry Meisenheimer & Gende, Inc. (HMG) and was appointed and supervised by Mayor Skertich as the City's Building Inspector solely for Plaintiff's garage. (*Id.*) Defendant HMG, which does business as HMG Engineers, was appointed by Mayor Skertich as the City's Engineer and Building Inspector solely for Plaintiff's garage. (*Id.*)

Defendant Jeffrey Bone was appointed and supervised by Mayor Skertich as the supervisor of the City Street Department. (*Id.*)

Defendant Melinda Zippay, who was politically supported by Mayor Skertich, was elected to and has served as City Clerk since May 2013. (*Id.* at 3.)

Defendant Marcia Schulte, who was politically supported by Mayor Skertich, was elected to and has served as Alderman of Ward 2 of the City. (*Id.*)

Defendants Howard Hall, Richard Webb, James Cox, Steve Remer, Leah Goldacker, and Chuck Cox were elected as Alderman of the City and politically supported by Mayor Skertich. (*Id.* at 4.)

Defendant John Goldacker, who was politically supported by Mayor Skertich, was elected as Alderman of the City and appointed as the City's Building Inspector. (*Id.* at 3.)

Defendant Dan O'Brien was appointed by Mayor Skertich and served as the City's Attorney. (*Id.* at 4.)

**B. Relevant Facts**

Plaintiff has resided at 114 W. 2nd South in the City for over 30 years, which is located in Ward 2 of the City. (*Id.*) He is not politically active and is not part of the dominant political party in the City. (*Id.*) Plaintiff is a private person who suffers from chronic physical and mental health issues. (*Id.*)

Plaintiff's great-grandfather was the founder of the City and has a City park named after him. (*Id.* at 5.) Plaintiff's great-uncle was a state senator, who resided and maintained a law office in the City. (*Id.*)

An Illinois statute, 65 ILCS 5/11-31-1, authorizes municipal authorities to address dangerous and unsafe buildings. (*Id.*) The statute mandates that all actions must be authorized by the municipal authorities, including the City Mayor and City Council. (*Id.*) The statute authorizes service of notice by mail to encumber an individual's property. (*Id.*)

A City ordinance, Code 25-5-1 etc., addressed unsafe buildings until October 2, 2017. (*Id.*) The Code required that the City Building Inspector present a report to the City Council for authorization to issue a Notice of Dangerous and Unsafe Building. *Id.* The Code required service of said notice by mail. (*Id.*) The City, with just over 900 households, has previously represented in circuit court proceedings that it does not follow its ordinances because it is a poor city. (*Id.* at 6.)

The City Council is comprised of eight aldermen, two from each ward, all of whom are from the same political party. (*Id.*) The City Aldermen have voted unanimously on all matters and have approved Mayor Skertich's agenda and appointments without dissent. (*Id.*)

Plaintiff alleges the City's Police Department, without cause, has harassed Plaintiff in the past. (*Id.* at 7.) Alderman Schulte holds a false grudge against Plaintiff and has not spoken to Plaintiff at any time relevant to this case. (*Id.*) Alderman Schulte lives across the street from the Plaintiff and has the most prominent view of Plaintiff's garage. (*Id.*)

Bradley Hummert is a licensed municipal engineer. (*Id.*) As the City's building inspector for the Plaintiff's garage, Hummert supervises any person regarding inspection of the garage, declaration of unsafe building, issuance of notice, and recommendation for litigation. (*Id.* at 7-8.) As the City's Building Inspector and pursuant to 65 ILCS 5/11-31-1, Hummert has the sole authority to inspect and report to the City's corporate authorities on the condition of Plaintiff's garage and advise whether a Notice of Dangerous and Unsafe Building should be authorized. (*Id.*)

In or about the Spring of 2012, the City issued Notices of Dangerous and Unsafe Buildings to several property owners. (*Id.* at 8.) The City Council did vote to authorize the issuance of a Notice of Dangerous and Unsafe buildings, expressly under both state statute and local ordinance, to one property owner who was a major supporter of the dominant political party and Mayor Skertich. (*Id.*) The City received a state grant to demolish and remove that building, which resulted in a substantial financial gain for the property owner. (*Id.* at 9.)

On July 9, 2012, the City served the 1st Notice of Dangerous and Unsafe Building regarding Plaintiff's garage. (*Id.*) The 2012 notice resulted in a case being filed in circuit court in 2013, but the case was dismissed without prejudice. (*Id.* at 10.) On September 4, 2013, the City served a 2nd Notice of Dangerous and Unsafe Building regarding Plaintiff's garage. (*Id.*) The City abandoned this notice without pursuing litigation. (*Id.* at 11.) On April 1, 2014, the City issued a 3rd Notice of Dangerous and Unsafe Building regarding Plaintiff's garage. (*Id.*) The 2014 notice resulted in litigation in which the circuit court held that it could order Plaintiff to repair the building. (*Id.* at 11-12; *see also City of Mt. Olive v. Viehweg*, 2017 IL App (4th) 160370-U.) However, the appellate court reversed the decision of the circuit court because the city council did not vote on the measure to abate Plaintiff's nuisance through court action. (*Id.*)

On March 3, 2021, the City issued a 4th Notice of Dangerous and Unsafe Building regarding Plaintiff's garage. (*Id.* at 15.) The City's 4th Notice was signed by City Police Chief Joe Berry, who personally served Plaintiff with notice. (*Id.*) On April 27, 2021, Plaintiff sent a letter to the City. (*Id.*) On May 3, 2021, the City Council voted

unanimously to accept Plaintiff's letter. (*Id.* at 16.) On May 7, 2021, Jeff Bone ordered the City street department to place two sawhorses and caution tape on Plaintiff's property. (*Id.*) On May 19, 2021, City Attorney Dan O'Brien left Plaintiff a telephone message about avoiding litigation and saving money. (*Id.*)

Plaintiff alleges it is irrational for the City to not comply with 65 ILCS 5/11-31-1. (*Id.*) Jeff Bone has caused the demolition of several buildings due to unlawful notices of unsafe building. (*Id.*) Moreover, Bradley Hummert understood that he would testify at any hearing regarding Plaintiff's unlawful 4th Notice of Unsafe Building. (*Id.*)

Plaintiff claims that, as the only City of Mt. Olive resident who has resisted the conspirators' unlawful actions, he fears retaliation, false accusation, false arrest, loss of liberty, and loss of property. (*Id.*) Plaintiff states that he has not repaired his garage. (*Id.* at 17.) Furthermore, the City's 4th Notice establishes the City's control over Plaintiff's garage, encumbers Plaintiff's property, and devalues it. (*Id.*)

Plaintiff alleges each Defendant knowingly engaged in conspiracy, understanding that when he or she accepted his or her position with the City, he or she would be a co-conspirator under Mayor Skertich's direction. (*Id.* at 18.) According to Plaintiff, every Defendant had an integral role regarding the City's unlawful notices of unsafe buildings based on their position with the City. (*Id.*)

Plaintiff asserts the allegations establish claims for deprivation of his procedural and substantive due process and denial of equal protection. (*Id.* at 18-20.)

## II. DISCUSSION

Defendants Bradley G. Hummert and HMG move to dismiss Plaintiff's Amended Complaint on the basis Plaintiff failed to allege that either Defendant was involved in a conspiracy with other Defendants to deprive Plaintiff of his constitutional rights. (Doc. 37, Def.'s First Mot. Dismiss 2.) Additionally, Defendants assert any § 1983 claims are time-barred because all of the alleged acts by Hummert and HMG occurred more than two years before the lawsuit was filed. (*Id.*)

In response, Plaintiff argues it is more than plausible that Defendants Hummert and HMG would testify at any future hearing on the matter. (Doc. 48, Pl.'s Resp. First Mot. Dismiss 5.) Moreover, it is plausible that Defendants agreed to be silent while other co-conspirators acted to issue and serve the notice and take control over Plaintiff's property. (*Id.*) Plaintiff also claims that these Defendants are the City's engineers and are obtaining substantial benefit from their participation. (*Id.*)

Defendants City of Mt. Olive, Joe Berry, Jeff Bone, Chuck Cox, James Cox, Howard Hall, John Goldacker, Leah Goldacker, Dan O'Brien, Steve Remer, Marcia Schulte, John Skertich, Richard Webb, and Melinda Zippay seek dismissal on the basis that Plaintiff's allegations are conclusory and are not supported by any facts. (Doc. 41, Def.'s Second Mot. Dismiss 1-2.) Additionally, any claims concerning incidents that occurred prior to June 3, 2019, are barred by the two-year limitations period. (*Id.* at 2.) Finally, Plaintiff's claims concerning 2021 events are not yet ripe, and the individual Defendants are entitled to qualified immunity on the damages claims. (*Id.*)

In response, Plaintiff claims the sixteen Defendants are co-conspirators who have custody of all of the evidence which is not yet known to Plaintiff. (Doc. 47, Pl.'s Resp. Second Mot. Dismiss 1.) Plaintiff asks the Court to withhold decision until completion of discovery. However, the sufficiency of the allegations of the complaint are at issue in a motion to dismiss, not the potential evidence that might be uncovered in discovery.

Plaintiff alleges that any acts occurring more than two years before the Complaint are not presented for the purpose of alleging an independent cause of action but are pleaded as circumstantial evidence in order to establish what Defendants did or must have known, the nature of Defendants' intent and mutual understanding, and Defendants' expected roles regarding the acts and/or omissions. (Doc. 47, Pl.'s Resp. Second Mot. Dismiss 3.) Additionally, the issue is ripe for review. (*Id.* at 5.) Plaintiff further claims he has pled sufficient facts to assert conspiracy, and Defendants are not entitled to qualified immunity. (*Id.* at 6-8.)

### A. Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. (*Id.*)

To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). Pro se motions are

liberally construed. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017) (We "construe pro se filings liberally, and we will address any cogent arguments we are able to discern."). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a claim. *Id.* The complaint must do more than assert a right to relief that is "speculative." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### B. Defendants Hummert and HMG

Defendants Bradley G. Hummert and HMG move to dismiss on the basis that Plaintiff's allegations directed at them involve conduct that occurred in 2012, 2013, and 2015, and such claims are time-barred under the two-year statute of limitations period for § 1983 claims. (Doc. 38, Mem. Supp. Mot. Dismiss 1.) Defendants further assert that, even if the claims are not time-barred, the limited conduct that Plaintiff attributes to Defendants Hummert and HMG falls short of plausibly alleging those Defendants were involved in a conspiracy to deprive Plaintiff of his constitutional rights. (*Id.*)

The applicable statute of limitations for § 1983 claims is the state limitations period for personal injury torts, which in Illinois is two years. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). The following overt acts alleged in the Amended Complaint are the only ones attributed to Hummert or HMG: (1) prior to July 9, 2012,

HMG reported that it could not determine Plaintiff's garage to be unsafe without an interior inspection (Doc. 36, Pl. Am. Compl. 9-10); (2) on August 15, 2013, Hummert wrote a letter stating that he had inspected and photographed the exterior of Plaintiff's garage (*Id.* at 10-11); and (3) on September 2, 2015, Hummert testified that Mayor Skertich asked him to inspect Plaintiff's garage, and Hummert delivered his report to Mayor Skertich (*Id.* at 12.) This lawsuit was filed on June 3, 2021. According to Plaintiff's own allegations, all acts committed by Hummert and HMG that form the basis of Plaintiff's claims were committed well over two years before the action was filed. Plaintiff argues the actions attributed to Defendants Hummert and HMG are part of an ongoing ten-year conspiracy. (Doc. 48, Pl. Resp. First Mot. Dismiss 2.)

Even assuming Defendants Hummert's and HMG's acts in stating that an interior inspection of Plaintiff's garage is needed and submitting a report concerning an inspection of the exterior of the garage to the Mayor could support a § 1983 claim, any such claims are time-barred. To the extent Plaintiff alleges these Defendants would testify at any future hearing, that claim is speculative at best. The assertion that these Defendants agreed to be silent while other Defendants served notice and sought control of Plaintiff's property is also speculative. Therefore, the Court will grant Defendants' Motion to Dismiss on the basis that any claims against Hummert and HMG are barred by the two-year statute of limitations.

Even if the Plaintiff's claims are not barred by the limitations period, it is difficult to see how the acts of inspecting the exterior of Plaintiff's garage, drafting a report concerning the inspection, and testifying at a hearing about the report could constitute a

conspiracy to deprive Plaintiff of his constitutional rights. Accordingly, the Court concludes that dismissal is also appropriate on that basis.

### C. Additional Defendants

Defendants City of Mt. Olive, Joe Berry, Jeff Bone, Chuck Cox, James Cox, Howard Hall, John Goldacker, Leah Goldacker, Dan O'Brien, Steve Remer, Marcia Schulte, John Skertich, Richard Webb, and Melinda Zippay also move to dismiss Plaintiff's Amended Complaint for failure to state a claim. (Doc. 41, Def's Second Mot. Dismiss.)

#### 1. Procedural Due Process Claim

Plaintiff alleges Defendants violated his procedural due process rights under the Fourteenth Amendment which provides in part, "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. The alleged violation of a rule or ordinance is not enough to allege a constitutional claim. *See Taake v. County of Monroe*, 530 F.3d 538, 541 (7th Cir. 2008) ("A unit of state or local government does not violate the federal Constitution just because it violates a state or local law.") To assert a claim for violation of procedural due process, a plaintiff must demonstrate "1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Forgue v. City of Chicago*, 873 F.3d 962, 969 (7th Cir. 2017). Property interests are not derived from the Constitution but are created and its dimensions defined by existing rules or understanding from another source such as state law. *See id.*

The constitutional violation is not complete "unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). It is thus necessary to "examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Id.* A factor in determining the adequacy of pre-deprivation proceedings is the availability and nature of post-deprivation remedies. *See Tucker v. City of Chicago*, 907 F.3d 487, 491-92 (7th Cir. 2018). While a plaintiff need not exhaust state remedies before bringing a § 1983 claim, "a plaintiff who foregoes her right to pursue post-deprivation remedies available under state law faces a high hurdle in establishing a due process violation." *Id.* at 492; *see also Simmons v. Gillespie*, 712 F.3d 1041, 1044 (7th Cir. 2013) ("The due process clause does not permit a litigant to disdain his opportunities under state law and then demand that the federal judiciary supply a remedy."). Therefore, a plaintiff's right to pursue judicial review in state court is a factor for federal courts to consider. *Id.*

Plaintiff has not alleged Defendants demolished his garage or that he does not have the use or enjoyment of his garage due to any actions of the City Defendants. In fact, Plaintiff alleges that he has not repaired his garage, and "it stands like a monument to due process and equal protection of law." (Doc. 36, Pl. Am. Compl., 17.)

Plaintiff neither alleges he was deprived of any property nor threatened with a violation of property rights or liberty without due process. Plaintiff's Amended Complaint alleges that, in previous instances when the City sought to address the defects of Plaintiff's garage, the City provided Plaintiff with notice that the building was

dangerous or unsafe before initiating any judicial proceedings and abandoned the initiation of a judicial proceeding after another notice was provided. (Doc. 36, Pl. Am. Compl., 9-13.) Plaintiff also alleges that, in 2017, the City adopted § 11-31-1 of the Illinois Municipal Code (65 ILCS 5/11-31-1), which provides that with 15 days' written notice mailed to the property owner, corporate authorities may apply to the circuit court for an order authorizing action to be taken on an unsafe building. Plaintiff does not allege that the notice provided him on March 3, 2021, resulted in any circuit court action.

Plaintiff does not allege that his judicial remedy in circuit court, assuming an action is filed against Plaintiff, is constitutionally inadequate. Rather, Plaintiff's allegations indicate that he has prevailed thus far and has avoided the City's efforts seeking demolition of the garage. To the extent Plaintiff alleges City officials have violated state law prior to initiating any state proceedings, the violation of state law does not equate with a violation of the Constitution. *See Taake*, 530 F.3d at 541. Plaintiff admits in his Amended Complaint that he has been provided notice, an opportunity to be heard, and a judicial forum before any deprivation has occurred. Because Plaintiff has alleged no facts suggesting a plausible procedural due process claim, the Court grants Defendants' Motion to Dismiss Plaintiff's procedural due process claims.

### 2. Substantive Due Process Claim

Plaintiff also alleges a claim for violation of his substantive due process rights under the Fourteenth Amendment. Substantive due process is very limited in scope and protects against "only the most egregious and outrageous government action." *Campos*

*v. County of Cook*, 932 F.3d 972, 975 (7th Cir. 2019). To assert a substantive due process claim, a plaintiff must allege the government abused its power in a manner that is "so contrary and oppressive that it shocks the conscience." *Catinella v. County of Cook*, 881 F.3d 514, 519 (7th Cir. 2018). The decision of the government entity must have been arbitrary to the point of being egregious to implicate substantive due process. *See id.*

"Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate governmental interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). Because the right infringed upon is an interest in property rather than life or liberty, the plaintiff property owner must first establish either an independent constitutional violation or show that the state court remedies are inadequate before a federal court considers whether the interference with property is arbitrary or irrational. *Id.*

"Once a landowner obtains such a state-created property right, the due process clause of the Fourteenth Amendment circumscribes, but does not eliminate, the government's ability to deprive him of that interest." *General Auto Service Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008). Substantive due process neither "acts as a blanket protection against unjustifiable interferences with property" nor does it "confer on federal courts a license to act as zoning boards of appeals." *Id.*

Plaintiff has not alleged that the state law procedures surrounding the deprivation of property are inadequate or that Defendants have engaged in an independent violation of a fundamental right within the meaning of due process. The

City Defendants certainly have a rational interest in seeking to have buildings in disrepair renovated or removed. Those individuals must consider issues such as property values along with attracting residents and businesses to the City. Such actions by the Defendants are not egregious, arbitrary and capricious, random, or irrational and they certainly do not in any way shock the conscience.

To the extent Plaintiff alleges Defendants violated a local ordinance and/or state law, that is not enough to allege a substantive due process claim. *See Taake*, 530 F.3d at 541. Because Plaintiff has failed to allege facts suggesting a plausible substantive due process claim, the Court grants Defendants' Motion to Dismiss Plaintiff's substantive due process claims.

### 3. Equal Protection Claim

Plaintiff also alleges Defendants violated his equal protection right guaranteed by the Fourteenth Amendment. The equal protection clause prohibits "invidious discrimination in statutory classifications and other governmental activity." *D.S. v. East Porter County School Corp.*, 799 F.3d 793, 799 (7th Cir. 2015). Plaintiff must show Defendants "acted with a nefarious discriminatory purpose and discriminated against [him] based on [his] membership in a definable class." *Id.* In order to assert a claim for violation of the equal protection clause, a plaintiff must establish that (1) he is a member of a protected class; (2) he is otherwise similarly situated to members of the unprotected class; and (3) he was treated differently from members of the unprotected class. *See McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989).

Here, Plaintiff has not alleged he is a member of any protected class. He did not allege any facts regarding discriminating behavior by Defendants against him because of his race, national origin, or gender. Accordingly, the Court concludes that Plaintiff has not asserted an equal protection claim based on invidious discrimination.

The Equal Protection Clause also prohibits the singling out of an individual for different treatment for no rational reason. *See Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). In order to succeed on a class-of-one equal protection claim, a plaintiff must show that he was intentionally treated differently from others similarly situated and there is no rational basis for that treatment. *See Miller v. City of Monona*, 784 F.3d 1113, 1119-20 (7th Cir. 2015). "Enforcement of local ordinances is a prosecutorial decision, which entails selectivity." *Van Dyke v. Village of Alsip*, 819 F. App'x 431, 432 (7th Cir. 2020) (internal citation omitted). "So an exercise of prosecutorial discretion, unless based on some invidious discrimination, is not typically a basis for a class-of-one challenge." *Id*. However, class-of-one claims can be premised on "allegations of the irrational or malicious application of law enforcement powers" for reasons such as animus or harassment. *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). In order to withstand a motion to dismiss, a plaintiff raising a class-of-one equal protection claim must allege facts sufficient to overcome the presumption of rationality that applies to government action. *Flying J, Inc. v. City of New Haven*, 549 F.3d 538, 546-47 (7th Cir. 2008). A plaintiff must "negative any reasonably conceivable state of facts that could provide a rational basis" for defendant's actions. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 772 (7th Cir. 2021).

The facts alleged in Plaintiff's Amended Complaint do not negate every conceivable rational basis for Defendants' actions. Rather, they show Defendants' actions had a rational basis. Plaintiff has a garage that the City claims is dilapidated. Plaintiff was given multiple notices to repair or demolish the garage. A court previously found that the garage needed to be demolished. (Doc. 36, Pl. Am. Compl. 11.) However, that judgment was reversed based on problems with the City's ordinance and Mayor Skertich's unilateral actions. (*Id.*) The appellate court did not disagree with the finding that the garage needed to be demolished. In 2017, Defendants amended the applicable ordinance and, when the garage was neither repaired nor demolished, the City later commenced efforts to remedy what the City believed was a dangerous and unsafe building. (*Id.* at 14-16.) While Plaintiff now disputes that the roof has collapsed, he previously admitted that the roof of the structure had collapsed. *See City of Mt. Olive v. Viehweg*, 2017 IL App (4th) 160370-U. The City has taken no action other than to notify Plaintiff he is the owner of a dangerous and/or unsafe building, which could result in further action by a judicial tribunal. Although Plaintiff claims he is a victim of harassment, the Court finds Plaintiff has not alleged sufficient facts to overcome the presumption of rationality as to the City's actions.

Because Plaintiff has failed to allege that he was treated differently than similarly situated persons and has not met his burden of alleging facts negating every conceivable rational basis for Defendants' actions, the Court finds Plaintiff has not alleged a plausible equal protection violation. Therefore, Plaintiff's equal protection claim is dismissed.

### III. CONCLUSION

For the reasons stated herein, Plaintiff's due process and equal protection claims are dismissed for failure to allege a plausible claim. Dismissal is also appropriate to the extent that any claims occurred prior to June 3, 2019, on the basis that such claims are time-barred for the reasons noted in Defendants Hummert's and HMG's Motion to Dismiss.

Additionally, any procedural due process claims relating to the 2021 notice are not yet ripe, because Plaintiff has not alleged the City initiated state court proceedings since the March 2021 notice to require Plaintiff to make his garage safe. A plaintiff may initiate an action when "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Regulation Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 187 (1985), overruled on other grounds *by Knick v. Township of Scott, Pennsylvania*, ___ U.S. ___, 139 S. Ct. 2162, 2169 (2019). The Court in *Knick* noted that the finality requirement discussed in *Williamson County* was not at issue. *Id.* at 2169. If the City were to initiate such an action, Plaintiff would be entitled to an opportunity to be heard and to receive due process at the state level. Because that did not occur, Plaintiff's claims concerning the 2021 notice are not yet ripe.

Finally, the individual Defendants would also be entitled to qualified immunity as to Plaintiff's claims for damages because Plaintiff has not plausibly alleged that any Defendant violated his clearly established constitutional rights.

For all of these reasons, Defendants Henry Meisenheimer & Gende, Inc. and Bradley G. Hummert's Motion to Dismiss under Rule 12(b)(6) (Doc. 37) is GRANTED.

The remaining Defendants' Motion to Dismiss under Rule 12(b)(6) (Doc. 41) is also GRANTED.

The Clerk will enter Judgment in favor of Defendants and close this case.

ENTER: April 21, 2023

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE